UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

ALLEN JACKSON,

                                                   Plaintiff,

                              -against-

THE CITY OF NEW YORK, a municipal corporation;
SGT. KEITH CHENG, (Shield No. 644); P.O. STEVEN
FURSA, (Shield No. 13278); P.O. JASON RIBEIRO,
(Shield No. 6214); CPT. ERIK WOROBEY; and P.O.
JOHN DOE #1-2, in their individual and official capacities,

                                                   Defendants.
-----------------------------------------------------------------------------X

**FIRSTAMENDED COMPLAINT**

15-CV-00450 (SJ) (RLM)

**JURY TRIAL DEMAND**

        Plaintiff, Allen Jackson, by his attorney, Steven E. Lynch, alleges for his complaint

against the defendants as follows:

## PRELIMINARY STATEMENT

1.        Plaintiff brings this action for compensatory damages, punitive damages,

and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his

civil rights guaranteed by the Constitution of the Unites States.

## JURISDICTION

2.        This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the

Fourth and Fourteenth Amendments to the United States Constitution.

3.        Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.        Venue is properly laid in the Eastern District of New York under 28 U.S.C.

§ 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

7.      Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.      At all times hereinafter mentioned, the individually named defendants, SGT. KEITH CHENG, P.O. STEVEN FURSA, P.O. JASON RIBEIRO, CPT. ERIK WOROBEY, and P.O. JOHN DOE #1-2, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13.     On or about November 18, 2012, at approximately 9:15 p.m., plaintiff opened the door to plaintiff's apartment inside of 776 Crown Street, Brooklyn, New York and saw defendants arresting plaintiff's friend.

14.     Plaintiff's sister observed the arrest of plaintiff's friend.  Plaintiff returned to his kitchen table and sat down.

15.     Plaintiff's sister repeatedly told defendants that they could not enter plaintiff's residence.

16.     Defendants entered plaintiff's apartment without permission or authority or exigent circumstances and arrested plaintiff inside of plaintiff's home.

17.     Defendants threatened to mace plaintiff and handcuffed plaintiff.  Plaintiff asked why he was being arrested.  Defendants told plaintiff that his arrest "might be for nothing."

18.     Defendants led plaintiff out of plaintiff's apartment in handcuffs.

19.     Plaintiff, an innocent bystander wounded in a May 2011 shooting, suffers from nerve damage and has difficulty walking.

20.     Plaintiff could not keep the pace of defendants and told defendants "I can't walk that fast my leg is hurt."

21.     Despite plaintiff's protestations, defendants forced plaintiff to walk at a speed beyond plaintiff's physical capability, causing plaintiff to fall.  Subsequently, defendants dragged

plaintiff down two flights of stairs while plaintiff was handcuffed, causing plaintiff extreme pain.

22.     Plaintiff was taken to the 71st Precinct, 421 Empire Boulevard, Brooklyn, New York 11225.

23.     Plaintiff was released without charge after approximately three (3) hours in custody.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations for Warrantless Entry of Plaintiff's Home*
(Against the Individual Officer Defendants)

24.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

25.     Defendants entered plaintiff's home without a search warrant, an arrest warrant, permission, authority, or exigent circumstances. By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his home and are liable to plaintiff under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

26.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

27.     As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

28.     Plaintiff was conscious of his confinement.

29.     As a result of the foregoing, plaintiff's liberty was restricted in filthy and degrading conditions for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

30.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiff under 42 U.S.C. §1983

**THIRD CAUSE OF ACTION**
*42 U.S.C. § 1983* - Fourth Amendment Violation for Excessive Force
(Against the Individual Officer Defendants)

31.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

32.     While in the course of their duties and while acting under color of law, defendants effected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including but not limited to dragging plaintiff down two flights of stairs while plaintiff was handcuffed.

33.     The physical force of the individual officer defendant on plaintiff was objectively unreasonable.

34.     The individual officer defendants' use of excessive physical force caused injuries, including but not limited to, pain to the plaintiff's leg.

35.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of her person and are liable to plaintiff under 42 U.S.C. §1983.

## FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

37.     The defendants who were present but did not actively participate in the unlawful actions alleged herein and who observed and had an opportunity to prevent such conduct and failed to intervene.

38.     By virtue of the foregoing, the defendants who failed to intervene deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983

## FIFTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

39.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

40.     The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

than $117 million.[2]  In the past ten years, the City of New York has paid nearly a billion dollars

on lawsuits brought against the NYPD.[3]

41.     The widely held assumption is that civil rights lawsuits deter police misconduct.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257,

(1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as

we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006)

citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467

U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect

(citation omitted) surely particularly so when the individual official faces personal financial

liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409,

442, and footnote 6 (1976).

42.     However, the City of New York has isolated NYPD officers from accountability

for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens,

and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the

NYPD or its officers.  Civil rights lawsuits against police officers have no impact on the officers'

careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple

lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect"

between the settlements of even substantial civil claims and police department action against

---

[2]   Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at
www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

[3]   "Report: Number Of Lawsuits Against NYPD Hits Record High," http://newyork.cbslocal.com/2014/02/16/report-
number-of-lawsuits-against-nypd-hits-record-high/, February 16, 2014 last visited on November 7, 2014.

officers.[4]  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

43.    The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

44.    Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

45.    Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on November 7, 2014.

occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

46.     All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

47.     In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with  "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

48.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

49.     Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

50.     As a result of the foregoing, plaintiff Allen Jackson is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory damages in an amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.


Dated:  New York, New York
      August 5, 2015                  By:    Steven E. Lynch
                                               _____/s/_____

                                               Steven E. Lynch
                                               Attorney for Plaintiff
                                               The Law Offices of Steven E. Lynch
                                             233 Fifth Avenue, Suite 4A
                                             New York, New York 10016
                                             (T) (718) 858-8737
                                             (F) (718) 690-3593
                                             steven@stevenelynch.com